UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 22 CR 58 |
| v. ) | |
| ) | Judge Elaine C. Bucklo |
| DONALD HENKEL, ) | U.S. District Court |
|    a/k/a "D.B. Henkel," ) | |
|    a/k/a "Donavan Kelly," ) | |
|    a/k/a "Bruce Kelly," ) | |
| MARK HENKEL, and ) | |
| RAYMOND PAPARELLA ) | |

**MOTION OF THE UNITED STATES TO ADMIT EVIDENCE
PURSUANT TO FED.R.EVID. 801(d)(2)(E)**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, moves this Court to admit certain statements against defendants pursuant to Fed. R. Evid. 104(a), 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978).

**I. INTRODUCTION**

In this submission, the government describes the law governing coconspirator statements, outlines some of its evidence establishing the charged conspiracy, and sets forth some of the coconspirator statements for which a pretrial ruling by the Court is requested, in accordance with *Santiago*, 582 F.2d at 1130-31, and established practice in this Circuit. *See United States v. Alviar,* 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Harris,* 585 F.3d 394, 398, 400 (7th Cir. 2009).

1

This submission does not detail all of the government's evidence that would establish the existence of the fraudulent scheme or all of the co-schemer statements that were made in furtherance of the charged fraudulent scheme. Rather, this submission highlights for the Court certain of the government's evidence sufficient to establish the existence of the scheme described in Count One and the participation of the co-schemers. As a result, this submission does not list all of the government's evidence and witnesses, nor does it provide all of the evidence that will be presented by identified witnesses. Finally, by presenting statements attributed to particular witnesses, the government is not committing to call each of the witnesses for each of the statements attributed.

## II. OVERVIEW OF THE CHARGED SCHEME

As alleged in Count One of the indictment, defendants Donald Henkel, Mark Henkel and Ray Paparella participated in a scheme to fraudulently sell forged and inauthentic pieces of art and memorabilia. Through various methods, Donald Henkel altered and forged numerous paintings and other items, including sports memorabilia and other purportedly signed collectibles. Donald and Mark Henkel then then sold and directed others, including Ray Paparella, to sell the items and to make material misrepresentations regarding the authenticity and provenance of the items.

## III. GOVERNING LAW

Federal Rule of Evidence 801(d)(2)(E) provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a

2

party during the course and in furtherance of the conspiracy." Although this rule refers to "coconspirators," it applies equally to joint venturers, "even though no conspiracy has been charged." *See* Note to Subdivision 801(d)(2)(E); *United States v. Reynolds*, 919 F.3d 435, 439 (7th Cir. 1990) ("Although the existence of a conspiracy allows the prosecution to use co-conspirator statements that would otherwise be hearsay, it is not necessary to charge a conspiracy in order to take advantage of Fed. R. Evid. 801(d)(2)(E); it is enough to show that a criminal venture existed and that statements took place during and in furtherance of that scheme."); *see also United States v. Shah*, 2023 WL 22140 at *1 (N.D. Ill. Jan. 3, 2023). Admission of such co-schemer statements against a defendant is proper where the government establishes by a preponderance of the evidence that: (1) a conspiracy, joint venture or criminal scheme existed; (2) the defendant and the declarant were members of the scheme; and (3) the statements were made during the course and in furtherance of the scheme. *See United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010).[1]

### A. Existence of and Membership in the Conspiracy or Joint Venture

In accord with *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), this Court must determine whether statements by the defendants' coschemers will be

---

[1] No Sixth Amendment confrontation issues arise by the use of a non-testifying coconspirator's statements, offered for their truth against a defendant because they are not testimonial. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (citing *Davis v. Washington*, 547 U.S. 813, 823-24 (2006) and *Crawford v. Washington*, 541 U.S. 36 (2004)); *see also United States v. Hargrove*, 508 F.3d 445, 448-49 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial).

3

admissible at trial under Federal Rule of Evidence 801(d)(2)(E). In making this determination, this Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy …." *Id*. at 1143 (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)); *see also United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001). If this Court determines the statements are admissible, the jury may consider them for any purpose. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991).

Under *Santiago*, the government must make a preliminary offer of evidence to show: (1) a conspiracy existed; (2) the defendants and declarant were members of the conspiracy; and (3) the statements sought to be admitted were made during and in furtherance of the conspiracy. *Santiago*, 582 F.2d at 1134-35; *see also, e.g., United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). According to *Bourjaily v. United States*, 483 U.S. 171, 176-81 (1987), the court can consider the statements in question (the statements to be admitted) to determine whether the three *Santiago* criteria have been met.

Seventh Circuit cases construing *Bourjaily* have held that properly admitted hearsay, including statements admitted under the coconspirator exception to the hearsay rule (Fed. R. Evid.801(d)(2)(E)), may be used to prove what another person did or said that may demonstrate their membership in the conspiracy. *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994) ("[W]hile only the defendant's acts or

4

statements could be used to prove that defendant's membership in a conspiracy, evidence of that defendant's acts or statements may be provided by the statements of co-conspirators."); *United States v. Martinez de Ortiz*, 907 F.2d 629, 633 (7th Cir. 1990) (*en banc*).

While this Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendants' participation in it, *United States v. Bourjaily*, 483 U.S. 171, 178, 180 (1987); *United States v. Harris*, 585 F.3d 394, 398-99 (7th Cir. 2009), the contents of the proffered statements alone are not sufficient to establish the existence of a conspiracy and a defendant's participation. There must also be some supporting evidence or facts corroborating the existence of the conspiracy and a defendant's participation. *Harris*, 585 F.3d at 398-99. The evidence showing the existence of a conspiracy and a defendant's membership in it may be either direct or circumstantial. *See United States v. Johnson,* 592 F.3d 749, 754-55 (7th Cir. 2010); *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000).[2]

---

[2] The coconspirator statement rule does not apply when a statement is not being offered for the truth of the matter asserted. Accordingly, statements by coconspirators may be admitted against a defendant, without establishing the *Bourjaily* factual predicates set forth above, when such statements are offered to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. *See United States v. Guyton*, 36 F.3d 655, 658 (7th Cir. 1994) (statement that defendant out of cocaine not hearsay because showed membership in conspiracy); *United States v. Herrera-Medina*, 853 F.2d 564, 565-66 (7th Cir. 1988) (addressing "war stories" about the drug trade); *United States v. Van Daal Wyk*, 840 F.2d 494, 497-98 (7th Cir. 1988) (statements had non-hearsay value to establish knowledge of and membership in conspiracy); *United States v. Tuchow*, 768 F.2d 855, 867-69 (7th Cir. 1985) (pre-conspiracy statements admissible to set scope of anticipated conspiracy).

There is no requirement, under Rule 801(d)(2)(E), that the government establish all elements of a conspiracy, such as a meeting of the minds and an overt act. *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983); *United States v. Gil*, 604 F.2d 546, 548-50 (7th Cir. 1979). The government need only establish the existence of a joint venture for an illegal purpose (or for a legal purpose using illegal means) and participation in the joint venture by the defendant and the maker of the statement at issue (as well as that the statement was in furtherance of the venture). "[I]t makes no difference whether the declarant or any other 'partner in crime' could actually be tried, convicted and punished for the crime of conspiracy." *Gil*, 604 F.2d at 549-550; *see also Coe*, 718 F.2d at 835.

While there is thus a distinction between conspiracy law and admissibility under Rule 801(d)(2)(E), certain principles of general conspiracy law are relevant to the Rule 801(d)(2)(E) inquiries. For instance, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997); *see also United States v. Longstreet,* 567 F.3d 911, 919 (7th Cir. 2009); *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001). The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003). Further, a defendant joins a criminal conspiracy if he agrees with another person to one or more of the common objectives of the conspiracy; it is immaterial whether the defendant

6

knows, has met, or has agreed with every coconspirator. *Longstreet,* 567 F.3d at 919; *Jones*, 275 F.3d at 652.

A defendant (or other declarant) may be found to have participated in a conspiracy even if he joined or terminated his relationship with other conspirators at different times than another defendant or coconspirator. *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir. 1985); *see also United States v. Handlin*, 366 F.3d 584, 590 (7th Cir. 2004) ("it is irrelevant when the defendant joined the conspiracy so long as he joined it at some point"). Under Rule 801(d)(2)(E), a coconspirator's statement is admissible against conspirators who join the conspiracy after the statement is made. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). A coconspirator who has become inactive or less active in the conspiracy nevertheless is liable for his coconspirators' further statements unless he openly disavows the conspiracy or reports it to the police. *See United States v. Feldman*, 825 F.2d 124, 129 (7th Cir. 1987).

The government is not required to prove the identity of the declarant; nor must the declarant's identity be confirmed in the statement itself. *See United States v. Bolivar*, 532 F.3d 599, 604-05 (7th Cir. 2008). Rather, the government need only prove (from the statement, the context and/or other evidence) that the declarant was in fact a coconspirator. *Id.*

B.     **"In Furtherance of" the Conspiracy**

In determining whether a statement was made "in furtherance" of the conspiracy, courts evaluate the statement in the context in which it was made and look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *See Cruz-Rea,* 626 F.3d at 937; *United States v. Johnson,* 200 F.3d 529, 533 (7th Cir. 2000). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy. *Cruz-Rea,* 626 F.3d at 937-38. The "coconspirator's statement need not have been made exclusively, or even primarily, to further the conspiracy" in order to be admissible under the coconspirator exception. *Id.* at 937 (quotations and citations omitted). That statements were made to a government cooperating witness or undercover agent does not bar admission of statements otherwise "in furtherance" of the conspiracy. *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993); *see also United States v. Ayala,* 601 F.3d 256, 268 (4th Cir. 2010).

"Courts have found a wide range of statements to satisfy the 'in furtherance' requirement." *United States v. Cozzo,* 2004 WL 1151630 *2-3 (N.D. Ill. 2004) (collecting cases). In general, a statement that is "part of the information flow between conspirators intended to help each perform his role" satisfies the "in furtherance" requirement. *United States v. Alviar,* 573 F.3d 526, 545 (7th Cir. 2009) (quotations and citations omitted). *See also United States v. Gajo,* 290 F.3d 922, 929 (7th Cir. 2002). These include statements made:

8

- to conduct or help to conduct the business of the scheme, *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991); *see also United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000);[3]

- to recruit potential coconspirators, *Cruz-Rea*, 626 F.3d at 937-38; *United States v. Haynes*, 582 F.3d 686, 705 (7th Cir. 2009), abrogated on other grounds by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012);

- to identify other members of the conspiracy and their roles, *Alviar,* 573 F.3d at 545;

- to plan or to review a coconspirator's exploits, *United States v. Molt*, 772 F.2d 366, 369 (7th Cir. 1985);

- as an assurance that a coconspirator can be trusted to perform his role, *United States v. Sophie*, 900 F.2d 1064, 1073-74 (7th Cir. 1990); *see also United States v. Bustamante*, 493 F.3d 879, 890-91 (7th Cir. 2007);

- to inform and update others about the current status of the conspiracy or a conspiracy's progress (including failures), *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010); *Alviar*, 573 F.3d at 545;

- to control damage to an ongoing conspiracy, *United States v. Johnson,* 200 F.3d 529, 533 (7th Cir. 2000); *United States v. Molinaro,* 877 F.2d 1341, 1343-44 (7th Cir. 1989)*; United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988);

- to conceal a conspiracy where ongoing concealment is a purpose of the conspiracy, *Gajo*, 290 F.3d at 928-29; *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); *see also United States v. Maloney*, 71 F.3d 645, 659-60 (7th Cir. 1995);

- to reassure or calm the listener regarding the progress or stability of the scheme, *Sophie*, 900 F.2d at 1073; *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989);

---

[3] Statements that prompt the listener to act in a manner that facilitates the carrying out of the conspiracy are also made "in furtherance" of the conspiracy. *See United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997).

- to report conspirators' status and in turn receive assurances of assistance from coconspirators, *United States v. Prieto*, 549 F.3d 513 (7th Cir. 2008);

- "describing the purpose, method or criminality of the conspiracy," *United States v. Ashman*, 979 F.2d 469, 489 (7th Cir. 1992);

- statements to outsiders "to serve as a salesmanship technique to enhance his position in the eyes of [the outsider] and give confidence about the ability of the organization," *United States v. Stephenson*, 53 F.3d 836, 845 (7th Cir. 1995); *United States v. Curtis*, 37 F.3d 301, 308 (7th Cir. 1994).

Finally, it has long been the rule that any statement made by a conspirator during and in furtherance of a conspiracy is admissible against all coconspirators. *Beeson v. United States*, 90 F.2d 720 (7th Cir. 1937); *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996); *see also United States v. Rivera,* 136 F. App'x 925, 926 (7th Cir. 2005) ("Whether any other conspirator heard (or, in this instance, saw) that statement is irrelevant; agency, not knowledge, is the theory of admissibility.").

### C. Alternative Bases for Admissibility of Statements

Various statements made during the course of a conspiracy are independently admissible and do not require a Rule 801(d)(2)(E) analysis. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule.

#### 1. A Defendant's Own Statements

A defendant's own admissions are relevant to establish the factual predicates for the admission of coconspirator statements against him. *See United States v. Godinez*, 110 F.3d 448, 455 (7th Cir. 1997). Many statements described herein and

10

sought to be admitted against the defendant are independently admissible and do not require a Rule 801(d)(2)(E) analysis. A defendant's own admissions, for example, are admissible against him pursuant to Federal Rule of Evidence 801(d)(2)(A), without reliance on the coconspirator-statement rule.[4] *See United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993). By way of example, and as set forth herein, defendant Lee's admissions to law enforcement during post-arrest interview on June 25, 2020 are admissible against him under Rule 801(d)(2)(A). *See* Fed.R.Evid. 801(d)(2)(A) (providing that a "statement" is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity"). Additionally, a defendant's own admissions are relevant to establishing the factual predicates for the admission of coconspirator statements against him. *See United States v. Godinez*, 110 F.3d 448, 455 (7th Cir. 1997); *United States v. Potts*, 840 F.2d 368, 371-72 (7th Cir. 1987).

Moreover, statements during a conversation with a defendant that are offered by the government to provide context for a defendant's statements are, as a general matter, admissible as non-hearsay. For example, in *United States v. Gaytan*, 649 F.3d 573 (7th Cir. 2011), the Seventh Circuit addressed the district court's introduction of a confidential informant's recorded statements to the defendant. The Court held that

---

[4] Rule 801(d)(2)(A) provides in pertinent part that a "statement" is not hearsay if "[t]he statement is offered against a party and is … the party's own statement, in either an individual or a representative capacity."

11

the challenged statements were non-hearsay because they were offered not for their truth but to put the defendant's "own words in context and to help the jury make sense out of his reaction to what [the informant] said and did." *Id.* at 580 (defendant's responses "would have been unintelligible without the context provided by [the informant's] statements"). Likewise, a statement that is incapable of verification—such as a suggestion, question, offer, demand, or order—does not constitute hearsay because it "do[es] not make any truth claims." *United States v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999).

### 2. Non-Hearsay Statements

The coconspirator statement rule is not implicated where the relevant verbal declaration is not a "statement" within the meaning of Rule 801(a), that is, not an "assertion" subject to verification. An example would be an order or a suggestion. *See United States v. Tuchow*, 768 F.2d 855, 868 n.18 (7th Cir. 1985). This is because a "statement" is defined as "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Fed. R. Evid. 801(a). Thus, a statement which is incapable of verification, such as an order or a mere suggestion, is not hearsay and does not invoke a Rule 801(d)(2)(E) analysis. *See Tuchow*, 768 F.2d at 868.

Finally, the coconspirator statement rule does not apply when a statement is not being offered for the truth of the matter asserted, and thus does not constitute

12

"hearsay" as defined by Rule 801(c).[5] Accordingly, statements by alleged coconspirators may be admitted against a defendant, without establishing the *Bourjaily* factual predicates set forth above, when such statements are offered simply to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. *Gajo*, 290 F.3d at 929-30; *see also United States v. Herrera-Medina*, 853 F.2d 564, 565-66 (7th Cir. 1988); *Van Daal Wyk*, 840 F.2d at 497-98; *Tuchow*, 768 F.2d at 867-69. In this case, the government will seek to introduce numerous statements of the defendants that were *false* as evidence of their fraud and their intent to defraud. Since these statements are not being offered for the truth of the matter asserted, they are non-hearsay and therefore admissible given their relevance. *See United States v. Fluker*, 689 F.3d 988, 1000 (7th Cir. 2012) ("[T]he touchstone of hearsay is that evidence is being used to prove the *truth* of the matter asserted. These emails actually contained a number of false assertions, so they were not offered for their truth.") (citations omitted).

### 3. Co-Conspirator statements after *Crawford*

Only "testimonial" statements implicate the Confrontation Clause, *Crawford v. Washington,* 541 U.S. 36 (2004), and a statement made in furtherance of a conspiracy is not a testimonial statement. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (rejecting confrontation clause claim as to introduction of

---

[5] Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

13

coconspirator statements because such statements are not testimonial); *United States v. Hargrove*, 508 F.3d 445, 448 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial). Further, even if a hearsay statement does not qualify for admission under Rule 801(d)(2)(E), or any other hearsay exception, that fact alone would not create a Confrontation Clause issue because only testimonial statements implicate the right to confront a witness. *Crawford,* 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as . . . would an approach that exempted such statements from Confrontation Clause scrutiny altogether."); *see also Volpendesto*, 746 F.3d at 289 ("[a] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes.").

### IV. THE EVIDENCE OF THE JOINT VENTURE AND ITS PARTICIPANTS

At trial, the government's evidence will establish that defendant Donald Henkel schemed with co-defendants Mark Henkel and Ray Paparella to fraudulently sell forged and altered items of art and memorabilia, from approximately July 2005 to July 2020. As described in the indictment, Donald Henkel created false and altered works of art and memorabilia and then fraudulently sold and attempted to sell these items by misrepresenting them as genuine. At times, Donald Henkel sold the items himself, providing a false provenance to buyers. At other times, Donald and Mark Henkel worked together to recruit the straw sellers and instructed them to falsely

14

conceal their involvement in the transaction, portray the item as genuine, and/or to falsely portray how they had obtained the items to buyers. As set forth below, the anticipated evidence proves the existence of the joint criminal venture and each defendants' participation in it by a preponderance of the evidence. The evidence includes: (1) text messages, emails and letters from Donald and Mark Henkel to co-schemers and straw sellers; (2) communications of Donald Henkel, Mark Henkel, Paparella, and their co-schemers with potential buyers and auction houses; (3) evidence found during the search of Donald Henkel's residence; (4) toll records showing communications between the co-schemers, and between the co-schemers and potential buyers; (5) financial records showing payments received from victims of the fraudulent transactions and distribution of the scheme proceeds between the co-schemers.

Below, the government summarizes some of the evidence that it will present regarding the existence of the charged scheme. Such evidence clearly establishes the threshold requirement for admitting co-schemer statements during the trial of this case.

### A. Communications between Co-Schemers

At trial, the government anticipates calling several straw sellers, including Gary Abair, William Eatinger, Terry Elkins, Kim Smith, and Patrick Gravel, who sold items of art or memorabilia on behalf of Donald and/or Mark Henkel. The government expects these witnesses to testify to communications in which Donald

15

and Mark instructed the witness to give a false provenance for the item and/or to conceal their involvement in the transaction. For example, the government expects Gravel to testify that he was contacted by both Mark and Donald in connection with selling a purported Lou Gehrig-signed baseball bat, and that Mark explained they needed Gravel to make the sale because their names were known negatively in the industry. The government further expects Gravel to testify that Donald instructed Gravel to tell Victim 5 that Gravel had gotten the bat from his (Gravel's) father. On another occasion, Mark Henkel contacted Gravel about selling a painting titled "Morning in Brooklyn" for Donald. The government expects Gravel to testify that Donald then sent Gravel a handwritten letter providing a false provenance for the painting and instructing Gravel, among other things, to "say as little as possible & only give them prove[n]ance information when they ask" and "not to use any Michigan connections" to avoid raising suspicion of the Henkels' involvement, who both lived in Michigan.

### B. Evidence Found During the Search of Donald Henkel's Residence

The search of Donald Henkel's residence revealed circumstantial evidence of his role in the scheme: forging and altering pieces of art and memorabilia. For example, agents recovered a bat with a partial, in-progress signature purporting to be that of baseball legend Joe Jackson; a baseball with multiple purported Lou Gehrig signatures on it; other purportedly signed memorabilia and paintings scattered on

16

the floor, treated plainly as low-value items; various paper items with practice signatures, black lights, paints, inks, utility tape, exacto knives, stamps, vintage labels, old frames, different mixtures of finishes, and canvases.

### C. Financial Records

At trial, the government expects to admit financial records and financial summary exhibits, through the testimony of a forensic financial analyst, showing that a majority of the proceeds of sales of numerous painting and memorabilia were transferred either directly or through straw sellers to Donald Henkel, with portions going to Mark Henkel and Raymond Paparella for the transactions in which they were involved.

### D. Toll Records

The government expects to introduce toll records for phones used by the co-schemers to show that, consistent with the witnesses' testimony and the recorded communications, the co-schemers were in frequent contact with each other during the scheme period and surrounding the specific transactions in which they were involved.

## V. STATEMENTS MADE DURING AND IN FURTHERANCE OF THE CONSPIRACY

At trial, the government may seek to introduce the substance of conversations, which relate to this conspiracy. Examples of these conversations are included in the section above.

Some of the types of statements that the government proposes to offer as coconspirator statements are described below. These statements are some examples

17

of the statements offered, which are not intended to be all encompassing but rather to explain the premise for the admission of the statements that fall into the category of coconspirator statements. All of the statements that the government will offer were made during the course of the conspiracy. At this time, the government anticipates that these statements will be introduced through the witness testimony, and written and verbal recordings, some of which are detailed above.

### A. Conversations in furtherance of the scheme

Statements made by members of the joint criminal venture to accomplish or further their fraudulent scheme, including but not limited to:

4. Statements offering to sell the items and attempting to arrange and complete transactions with buyers;
5. Statements made to ascertain or to represent the market value of the items;
6. All representations made during efforts to sell the stolen items, including statements about the ownership, origin, nature, provenance or value of the stolen items, and misrepresentations as to where the items came from and who they belonged to;
7. Statements about storing, moving or transporting the stolen items;
8. Statements to conceal the scheme and avoid apprehension.

### B. Conversations with coconspirators about the scheme

Conversations between members of the joint criminal venture concerning various aspects of their fraudulent scheme, including, but not limited to:

1. Conversations about the items, the straw sellers, and the buyers;
2. Conversations about the manner in which the items were or might be sold, the value of the items and the prices paid for them, and misrepresentations about where the items came from and who they belonged to;

3. Conversations about the response from the buyers, questions or issues raised by the buyers;
4. Conversations about the success or failure of the transaction
5. Conversations about the amount of money received for selling the items and the manner and amount of payment between co-schemers or division of the proceeds between co-schemers;
6. Conversations about co-schemers motives' for forging, altering, misrepresenting and selling the items;
7. Conversations concerning efforts to avoid apprehension by the government, and to conceal the nature of their activities; and
8. Conversations about the manner in which defendant and his co-schemers were conducting their fraudulent scheme.[6]

.

---

[6] A number of out-of-court statements from these sources will be admissible without regard to the coconspirator hearsay rule, because they are statements of the defendant[s], statements not offered to prove the truth of the matter asserted, or for other reasons. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule. *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993). The coconspirator statement rule is also not implicated where the relevant verbal declaration is not a "statement" within the meaning of Rule 801(a). This rule defines "statement" as "an oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion." Thus, a statement which is incapable of verification, such as an order or a mere suggestion, is not hearsay and does not invoke a Rule 801(d)(2)(E) analysis. *See, e.g., United States v. Tuchow*, 768 F.2d 855, 868 n.18 (7th Cir. 1985).

## VI. CONCLUSION

The above is an outline of the evidence that the government will introduce to establish that the charged joint criminal venture existed and that the defendants were members of the joint venture and participants in the scheme. The Court should find, based upon this proffer, that coconspirator statements are admissible pending the introduction of evidence to support this proffer.

          Respectfully submitted,

          JOHN R. LAUSCH, JR.
          United States Attorney

By:   */s/ Kelly Guzman*
       KELLY GUZMAN
       KRISTIN PINKSTON
       Assistant United States Attorneys
       219 S. Dearborn Street, 5th Floor
       Chicago, IL 60604
       (312) 353-5300